IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TIMOTHY B. ABREU,

    Plaintiff,

v.                                                    No. CV 16-853 JCH/CG

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

    Defendant.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Plaintiff Timothy B. Abreu's *Plaintiff's Brief in Support of Motion to Remand and Reverse* (the "Motion"), (Doc. 13), filed April 13, 2017; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 18), filed May 30, 2017; and Mr. Abreu's *Reply to Defendant's Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Reply"), (Doc. 20), filed July 1, 2017. United States District Judge Judith C. Herrera referred this case to Magistrate Judge Carmen E. Garza to perform legal analysis and recommend an ultimate disposition. (Doc. 19).

Mr. Abreu filed applications for disability insurance benefits and supplemental security income on August 31, 2012, alleging disability beginning August 27, 2011. (Administrative Record "AR" 11). Mr. Abreu claimed he was limited in his ability to work due to cervical pain and constant neck pain with reduced range of motion. (AR 176). Mr. Abreu's applications were denied initially on November 28, 2012, and upon reconsideration on April 18, 2013. (AR 11). Mr. Abreu requested a hearing before an

Administrative Law Judge ("ALJ"), which was held on July 18, 2014, before ALJ John R. Morris. (AR 23). Mr. Abreu and Cornelius J. Ford, an impartial vocational expert ("VE"), testified at the hearing, and Aida M. Adams, an attorney, represented Mr. Abreu at the hearing. (AR 23-45).

On September 16, 2014, ALJ Morris issued his decision, finding Mr. Abreu not disabled at any time between his alleged disability onset date through the date of the decision. (AR 18). Mr. Abreu requested review by the Appeals Council, (AR 7), which was denied, (AR 1-3), making the ALJ's decision the Commissioner's final decision for purposes of this appeal.

Mr. Abreu now argues that the ALJ erred by: (1) failing to properly follow Social Security Rulings ("SSR") 96-8p and 96-7p in determining Mr. Abreu's residual functional capacity ("RFC"); and (2) failing to properly assess Mr. Abreu's credibility under SSR 96-7p. (Doc. 13 at 2-8). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the Court finds that the ALJ failed to address Mr. Abreu's limitations in his range of motion and ability to reach, and failed to properly weigh the medical opinions of Dr. Crawford, Dr. Whaley, and Dr. Davis, the Court recommends that Mr. Abreu's motion should be **GRANTED**.

I.  **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir.

1992). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---
[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III. Background

Mr. Abreu applied for disability insurance benefits and supplemental security income due to cervical pain and constant neck pain with reduced range of motion. (AR 176). At step one, the ALJ determined that Mr. Abreu had not engaged in substantial gainful activity since August 27, 2011, the alleged onset date. (AR 13). At step two, the ALJ concluded that Mr. Abreu has the following severe impairments: cervical spondylosis and cervical post-laminectomy syndrome. (AR 13). At step three, the ALJ determined that none of Mr. Abreu's impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 14).

At step four, the ALJ found that Mr. Abreu has the RFC to perform a full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (AR 14). In formulating Mr. Abreu's RFC, the ALJ stated that he considered Mr. Abreu's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529 and 416.929, and SSRs 96-4p and 96-7p. (AR 14). The ALJ stated that he also considered opinion evidence in accordance with 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (AR 14).

The ALJ noted that Mr. Abreu sustained a neck injury in a work-related accident in 2009, and underwent a cervical fusion procedure that same year. (AR 15). Mr. Abreu returned to work and reinjured his neck in June 2011 while doing "metalwork." (AR 15). The ALJ noted that while Mr. Abreu states that he could not work due to his injury, he

5

indicated in a June 27, 2011 office visit that he was laid off three weeks prior. (AR 15) (citing AR 246).

The ALJ next considered Mark Crawford, M.D.'s treatment notes, stating that these notes reflect a decreased range of motion, tenderness to palpitation, good strength in the upper extremities, and that Mr. Abreu was neurologically intact. (AR 15). The ALJ noted that Dr. Crawford ordered a series of imaging studies which resulted in the following findings: May 26, 2011 - a CT scan showed no evidence of spinal instability; July 7, 2011 - a CT scan showed a stable examination with slightly hypoplastic C4 and C5 vertebral bodies; and August 4, 2011 - an MRI showed mild spondylosis, slight disc bulge at C4, no impingement on the cord, and significant artifact at C5-6, secondary to the cervical disc replacement. (AR 15), citing (AR 267-269). In addition, Dr. Crawford found that a cervical myelogram performed on April 28, 2014 "showed severe right C3-4 forminal narrowing due in part to facet arthropathy, which has progressed since September 4, 2011, due to fusion of these facets, but revealed no focal cord impingement." (AR 15), citing (AR 330-331). The ALJ stated that "on September 11, 2012, Dr. Crawford released [Mr. Abreu] to return to light duty work for eight hours per day." (AR 15) (citing AR 258).

Next, the ALJ noted that a State Agency consultant determined that Mr. Abreu could perform a full range of light work. (AR 15) (citing AR 87). The ALJ stated that Mr. Abreu attended physical therapy and had injections for his pain, and that "[a]lthough [Mr. Abreu] is reporting excruciating headaches and neck pain, he takes only Ibuprofen or Advil for pain." (AR 15). The ALJ stated that "[t]he evidence supports that [Mr. Abreu] does have a pain producing cervical impairment and the more recent evidence shows

6

that [Mr. Abreu's] neck condition has progressed," but Mr. Abreu's "daily activities are not consistent with his allegations of totally disabling pain." (AR 15). In support of this finding, the ALJ noted that Mr. Abreu vacuums, dusts, is independent with his personal care tasks, shops, barbeques, does photography, goes hunting, and drives. (AR 15) (citing AR 187-194, 213-221).

The ALJ concluded that Mr. Abreu cannot return to his past work, but that Mr. Abreu's activities of daily living and Dr. Crawford's treatment notes "support that [Mr. Abreu] is capable of performing work at a lighter exertional level." (AR 16). The ALJ stated that he "afforded some weight to the opinion of the State agency physicians, in that [Mr. Abreu] cannot work." *Id.* The ALJ then stated that "the preponderance of the medical evidence fails to support the contention that [Mr. Abreu] can do no work at all." *Id.*

Having found that Mr. Abreu is unable to perform any of his past relevant work, the ALJ proceeded to step five. *Id.* The ALJ noted that on the alleged disability onset date, Mr. Abreu was 47 years old which is defined as a "younger individual age 45-49," and that Mr. Abreu subsequently changed age categories to "closely approaching advanced age." *Id.* The ALJ determined that Mr. Abreu has at least a high school education and is able to communicate in English. *Id.* The ALJ stated that the VE testified at the hearing that Mr. Abreu acquired the following work skills from his past relevant work: using hand and power tools, building and fixing items, and inputting accurate data. *Id.* The VE further testified that an individual with Mr. Abreu's same age, education, work experience, and RFC could perform the following representative occupations: lock assembler, ornament sorter, and clerical sorter, all performed at the

7

sedentary level and with a Specific Vocation Preparation level of 3. (AR 17). After finding the VE's testimony to be consistent with the Dictionary of Occupational Titles, the ALJ concluded that, based on an RFC for the full range of sedentary work, and considering Mr. Abreu's age, education, and transferable work skills, a finding of "not disabled" is reached by direct application of Medical Vocational Rule 201.22 and Rule 201.15. *Id.* Therefore, the ALJ found that Mr. Abreu is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). *Id.*

## IV. Analysis

Mr. Abreu argues that the ALJ erred by failing to properly follow SSRs 96-8p and 96-7p in determining Mr. Abreu's RFC, and by failing to properly assess Mr. Abreu's credibility under SSR 96-7p. (Doc. 13 at 2-8). Specifically, Mr. Abreu contends that the ALJ failed to conduct a function-by-function assessment and failed to evaluate the intensity, persistence, and limiting effects of Mr. Abreu's pain, reduced range of motion of the cervical spine, and headaches on his ability to work. *Id.* at 4-6. Mr. Abreu further argues that the ALJ failed to provide reasons for the weight given to the opinions of Mr. Abreu's treating physician, Dr. Crawford, in violation of SSR 96-2p. *Id.* at 7. Finally, Mr. Abreu contends that the ALJ erred in his credibility assessment because he failed to consider Mr. Abreu's efforts to obtain pain relief and his strong work history. *Id.* at 7-8.

In response, the Commissioner states that the ALJ properly supported his decision by relying on the medical evidence in the record, the conservative nature of Mr. Abreu's treatment, and Mr. Abreu's daily activities. (Doc. 18 at 2). The Commissioner contends that the ALJ properly discounted Mr. Abreu's statements about the extent of his limitations by relying on the following evidence: that Mr. Abreu retained an intact

neurological status, full upper extremity strength, and could perform light work; that Mr. Abreu received primarily conservative treatment for his pain and headaches; that Mr. Abreu engaged in daily activities that were not consistent with totally disabling limitations; and that Mr. Abreu may have stopped working because he was laid off shortly before his disability began. *Id.* at 8-10. The Commissioner states that, because Dr. Crawford opined that Mr. Abreu could perform light work, Mr. Abreu's contention that the ALJ failed to provide reasons for the weight given to his opinion "is of no consequence." *Id.* at 10. Additionally, the Commissioner contends that the ALJ properly relied on the Medical-Vocational Guidelines in making his step-five determination. *Id.* at 14-16.

In his reply, Mr. Abreu reiterates that the evidence in the record shows that he is not capable of performing a full range of sedentary work, and that the ALJ failed to consider the functional limitations caused by Mr. Abreu's reduced range of motion, pain and headaches. (Doc. 20 at 2-3). Mr. Abreu also contends that the ALJ's reasons for finding Mr. Abreu not fully credible are not supported by the evidence in the record. *Id.* at 4-6. Finally, Mr. Abreu contends that the ALJ erred at step five by failing to ask the VE to determine the number of jobs found in the economy for each of the representative occupations the VE found that Mr. Abreu could perform. *Id.* at 6-7.

*A. The ALJ's RFC Determination*

A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations." 20 C.F.R. §§ 404.1545, 416.945; *see also* SSR 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations."). The

ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any. SSR 96-8p at *5. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and the RFC assessment must always consider and address medical source opinions. *Id.*

Here, the ALJ found that Mr. Abreu is able to perform the full range of sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with no limitations. (AR 14). Mr. Abreu contends that the ALJ failed to consider the limiting effects of Mr. Abreu's pain, reduced range of motion of the cervical spine, and headaches on his ability to work. (Doc. 13 at 4-6). On the contrary, with regard to Mr. Abreu's allegations of pain and headaches, the ALJ expressly considered these allegations and concluded that the pain and headaches did not affect Mr. Abreu's capacity for sedentary work. (AR 15-16). The ALJ supported this conclusion based on: Dr. Crawford's findings that Mr. Abreu retained an intact neurological status, full upper extremity strength, and could perform light work; evidence that Mr. Abreu received primarily conservative treatment for his pain and headaches; Mr. Abreu's testimony that he engaged in daily activities that were

10

not consistent with totally disabling limitations; and evidence that Mr. Abreu may have stopped working because he was laid-off shortly before his disability began. (AR 15-16).

In contrast, the ALJ did not address evidence in the record that Mr. Abreu is limited in his range of motion and ability to reach. After Mr. Abreu's alleged disability onset date, Dr. Crawford consistently found that he had a limited range of motion of the cervical spine. *See* (AR 249, July 7, 2011 treatment note; AR 250, August 16, 2011 treatment note; AR 253, September 20, 2011 treatment note; AR 258, October 18, 2011 treatment note; AR 260, September 11, 2012 treatment note; AR 319, February 19, 2013 treatment note; and AR 338, May 27, 2014 treatment note). In addition, on November 19, 2012, State Agency consultant Stephen A. Whaley, M.D., opined that Mr. Abreu is limited in his ability to reach in any direction, including overhead, and recommended an RFC for light work with overhead reaching limitations. (AR 64). On April 17, 2013, State Agency consultant Ronald Davis, M.D., reached the same opinion as Dr. Whaley regarding Mr. Abreu's limitations in his ability to reach. (AR 75-76).

While the ALJ acknowledged that Mr. Abreu alleged disability due to cervical neck pain with reduced range of motion (AR 14), and that Dr. Crawford's treatment notes reflect that Mr. Abreu has a reduced range of motion (AR 15), the ALJ failed to explain why this limitation is not accounted for in his RFC determination. The ALJ also did not address Dr. Whaley's and Dr. Davis's findings of limitations in Mr. Abreu's ability to reach, and failed to account for these limitations in his RFC determination. The ALJ's failure to address this medical evidence without providing an explanation or support from the record for doing so is legal error. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (an ALJ must "discuss the uncontroverted evidence he chooses not to

rely upon, as well as significantly probative evidence he rejects"); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.") (citations omitted).

The ALJ's failure to consider Mr. Abreu's ability to reach is especially troubling because the Tenth Circuit has stressed the importance of considering this limitation in conjunction with a sedentary RFC. In *Saiz v. Barnhart*, 392 F.3d 397, 400 (10th Cir. 2004), the Tenth Circuit explained that an ALJ's failure to address a claimant's ability to reach when making a sedentary RFC determination "is not a technical or formalistic point" because "[a] sedentary RFC already represents a significantly restricted range of work." The Tenth Circuit further noted that the Commissioner's guidelines exclude the use of the grids if there is "more than a slight impact on the individual's ability to perform the full range of sedentary work," and "a finding of 'disabled' usually applies when the full range of sedentary work is significantly eroded." *Id.* (quoting SSR 96-9p,1996 WL 374185, at *3, *5). Because reaching is "required in almost all jobs," a limitation in this ability "may eliminate a large number of occupations a person could otherwise do." *Id.* (quoting SSR 85-15, 1985 WL 56857, at *7). In addition, the Court notes that all three representative occupations the VE found Mr. Abreu capable of performing require the ability to reach. *See* DOT 706.684-074, 1991 WL 679062 (providing that the occupation of lock assembler requires the ability to reach frequently); DOT 734.687-082, 1991 WL 679966 (providing that the occupation of ornament sorter requires the ability to reach constantly); and DOT 209.687-022, 1991 WL 671812 (providing that the occupation of clerical sorter requires the ability to reach frequently).

For the reasons stated above, the Court finds that the ALJ's failure to address Mr. Abreu's limitations in his range of motion and ability to reach is contrary to the requirements of SSR 96-8p.

*B. The ALJ's Consideration of Medical Opinion Evidence*

ALJs must evaluate and weigh every medical opinion in the record, including the opinions of non-examining State Agency physicians. 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Every medical source opinion should be weighed by the ALJ in consideration of the following applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citation omitted); *see also* 20 C.F.R. §§ 404.1527(c)-(d), 416.927(c)-(d). Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she ultimately assigns the opinions. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, 244 Fed. Appx. 880, 884 (10th Cir. 2007) (unpublished).

Treating sources are generally entitled to more weight than other sources, given their treatment relationship with the claimant. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Accordingly, ALJs must follow a particular, two-step process when

evaluating and weighing opinions from treating sources. 20 C.F.R. §§ 404.1527(b), 416.927(b); *see Watkins*, 350 F.3d at 1300-01. First, the ALJ must decide whether the treating source's opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "are not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the treating source's opinion satisfies both criteria, it is entitled to controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If a treating source's opinion is not entitled to controlling weight, the ALJ must determine how much weight to assign the opinion. Failure to assign weight to a treating source is reversible error. *See Watkins*, 350 F.3d at 1301; *Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011).

The ALJ did not state what weight he gave the opinions of Mr. Abreu's treating physician, Dr. Crawford, which is legal error. The Commissioner contends that because Dr. Crawford opined that Mr. Abreu could perform light work, the ALJ's failure to weigh Dr. Crawford's opinions "is of no consequence." (Doc. 18 at 10). While on October 18, 2011, Dr. Crawford stated that Mr. Abreu could "return to work with light duty restrictions and no working more than 8 hours a day" (AR 258), there is no indication that Dr. Crawford's reference to "work with light duty restrictions" was intended to encapsulate all of the requirements of the regulatory definition of the term "light work." *See, e.g., Weeks v. Colvin*, No. 13-cv-01234-PAB, 2015 WL 1476694, *4 (D. Colo. March 27, 2015) (unpublished) (finding the ALJ erred in assuming that a doctor's references to "light activities" and the "light category" constituted an opinion that the claimant was capable of performing "light work" within the meaning of the Social Security Act); *Wilson v. Astrue*, No. 09-2354-JAR-GBC, 2010 WL 1534191, *4 (D. Kan. March 31, 2010)

14

(unpublished) (rejecting the ALJ's finding that a doctor's opinion that the claimant could do "light duty work" indicated that the doctor thought that the claimant could do "light work" as it is defined in the Social Security Act). Because Dr. Crawford's findings that Mr. Abreu is limited in his range of motion are not incorporated in the ALJ's RFC determination, the Court finds that the ALJ's failure to weigh Dr. Crawford's opinion is not harmless error. *See Watkins*, 350 F.3d at 1301 ("Here, the ALJ failed to articulate the weight, if any, he gave Dr. Rowland's opinion . . . . We must remand because we cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion.").

In addition, the Court finds that the ALJ failed to properly evaluate the findings of the State Agency consultants. As stated above, both Dr. Whaley and Dr. Davis opined that Mr. Abreu is limited in his ability to reach in any direction, including overhead, and recommended an RFC for light work with overhead reaching limitations. (AR 64, 75-76). The ALJ stated that he "afforded some weight to the opinion of the State agency physicians, in that the claimant cannot work." (AR 16). The State Agency consultants did not opine that Mr. Abreu "cannot work," so this statement by the ALJ does not make sense. In addition, the ALJ failed to explain why he rejected these doctors' opinions regarding Mr. Abreu's reaching limitations. The ALJ's decision, therefore, is not sufficiently specific with regard to the weight given to the State Agency consultants' opinions, and the Court is unable to meaningfully review the ALJ's findings. *See Clifton*, 79 F.3d at 1009 (holding that "the absence of findings supported by specific weighing of the evidence" in the record leaves the Court unable to assess whether relevant evidence adequately supports the ALJ's conclusion); *see also Haga*, 482 F.3d at 1208

("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.") (citations omitted).

Based on the foregoing, the Court finds that the ALJ erred in his RFC determination by failing to properly consider the opinions of Dr. Crawford, Dr. Whaley, and Dr. Davis.

## V. Recommendation

For the reasons stated above, the Court finds that the ALJ erred by failing to address evidence of Mr. Abreu's limitations in his range of motion and ability to reach and by failing to properly weigh the medical opinions of Dr. Crawford, Dr. Whaley, and Dr. Davis. The Court does not address Mr. Abreu's claims regarding the ALJ's credibility assessment and step-five findings because those claims may become moot upon remand.

**IT IS THEREFORE RECOMMENDED** that Mr. Abreu's *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum*, (Doc. 17), be **GRANTED**, and that this case be **REMANDED** to the Commissioner for further proceedings.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE